In Re Validation of $500,000 Public Improvement General Obligation Bonds, McComb City, Mississippi, Pike County, To Be Issued For The Purpose of Erecting and Equipping A Community Hospital

No. 42724          May 6, 1963          152 So. 2d 698

*Norman Gillis, Jr., J. Gordon Roach,* McComb, for appellants.

450

*Mounger & Mounger*, Tylertown, for appellees.

KYLE, J.

This case is before us on appeal by Warren Wild and others from a decree of the Chancery Court of Pike County, sustaining objections of James Herrington and others, taxpayers of the City of McComb City, to the validation of $500,000 public improvement general obligation bonds of the City, authorized to be issued by the governing authorities of the municipality, under authority of Sections 7129-51, et seq., Mississippi Code of 1942, Rec., for the purpose of erecting and equipping a community hospital for the City.

The record shows that the proceeding for the issuance of the bonds was initiated by the adoption of a resolution by the Mayor and Board of Selectmen of McComb City at a recessed regular meeting of the Mayor and Board of Selectmen held on April 3, 1962, declaring

their intention to issue the general obligation bonds of the City in the amount of $500,000, for the purpose of acquiring real estate and to erect, equip and furnish a community hospital for the City, and providing for the holding of an election on the first day of May 1962, at which there should be submitted to the qualified electors of the City the proposition whether said bonds should be issued. The resolution provided that the election should be held on the above mentioned date, and that notice of the election should be given by publication one time each week for not less than three consecutive weeks in the McComb Enterprise Journal, a newspaper published and having a general circulation in the City, the first publication of such notice to be made not less than 21 days prior to the date fixed for the election and the last publication to be made not less than seven days prior to the date fixed for the election. The resolution prescribed the form of the notice of the election to be published and the form of the ballot to be used in the election, and the resolution stated that the bonds were to be issued under authority of the provisions of Sections 7129-51 et seq., of the Miss. Code of 1942, and that the bonds were to be issued if the issuance thereof should be assented to by a favorable vote of a majority of the qualified electors voting in the election. The resolution did not provide for the publication of the full text of the resolution as required by the statute. The record, however, shows that the full text of the resolution was published one time in the newspaper mentioned above, on April 20, 1962, but no other publication of the resolution was made.

The record shows that the notice of the election was published four times in the newspaper mentioned above, as follows: On April 9, 1962, April 16, 1962, April 23, 1962, and April 30, 1962. The notice of the election recited, that by virtue of the authority contained in the above mentioned resolution adopted by the Mayor and

Board of Selectmen on April 3, 1962, a special election would be held on the 1st day of May 1962, "to determine whether or not the bonds of the City of McComb City, Pike County, Mississippi, will be issued and sold in the amount of $500,000, or so much thereof as is necessary, but not to exceed the total amount of $500,000, with which to pay the City's portion of acquiring real estate for, and to erect, equip and furnish a community hospital for the City of McComb." The notice then stated that all qualified electors residing within the City were qualified to vote in the election, and that the election would be held and conducted by the election commissioners of the City in the same manner as a general election, and that the election would be held at the regular voting places and usual polling precincts in the City.

The election was duly held on May 1, 1962, and resulted in 1073 votes for the bond issue and 986 votes against the bond issue. The election commissioners filed their report with the Mayor and Board of Selectmen on May 2, 1962, and on May 8, 1962, a resolution was adopted and entered on the Minutes of the Mayor and Board of Selectmen accepting the report of the election commissioners and declaring that a majority of the qualified electors of the City had voted in favor of the issuance of the bonds.

On August 28, 1962, a resolution was adopted by the Mayor and Board of Selectmen, amending nunc pro tunc the resolution adopted on April 3, 1962, so as to include certain findings of fact which had been inadvertently omitted from Section 1 of the resolution. On November 13, 1962, the Mayor and Board of Selectmen ordered that the bonds be advertised for sale. Notice of the sale was duly published and on December 11, 1962, bids were received and a resolution was adopted accepting the bid of the Mechanic State Bank and associates, which was found to be the highest and best bid received. A formal resolution was then adopted au-

thorizing the issuance of the bonds, prescribing the form of the bonds and the interest coupons to be attached thereto, the rates of interest which such bonds should bear, and the dates of maturities and places of payment of the bonds; and it was further ordered that the bonds be validated under the provisions of Chapter 1, Title 18, of the Mississippi Code of 1942. The opinion of the State's Bond Attorney approving the validity of the bonds was filed with the Clerk on December 31, 1962; and a certified transcript of the record of the proceedings for the issuance and sale of the bonds was thereupon filed in the Chancery Court of Pike County for validation of the bonds. The chancellor set the cause for hearing on January 11, 1963, and notice of the hearing was duly published. On January 10, 1963, written objections to the validation of the bonds were filed by James Herrington and other taxpayers of the City. Numerous grounds for objection to the validation of the bonds were stated.

The cause was heard by the chancellor on January 28, 1963, and at the conclusion of the hearing the chancellor dictated into the record his findings of fact and his conclusions of law. The chancellor stated at the outset that the merits of the hospital program were not before the court. The question before the court was whether or not the law had been complied with in the issuance of the bonds. The chancellor found that many of the objections were without merit. But the chancellor found that the failure of the governing authorities of the municipality to comply with the requirement of the Code Section 7129-51, relating to the publication of the full text of the resolution declaring the intention of the governing authorities of the municipality to issue the bonds, represented a total departure from the procedure prescribed by the statute. The chancellor pointed out that the publication of the resolution declaring the intention of the governing authorities to issue the bonds

"gives the public and the qualified electors much more information as to the nature and purpose of the proposed bond issue than does the mere notice of calling an election." The chancellor therefore held that the failure to publish the resolution for a period of three weeks as required by the statute constituted a fatal defect in the proceedings. A decree was therefore entered sustaining the objections to the validation based upon the failure of the governing authorities of the municipality to publish the full text of the resolution for the length of time and in the manner required by the statute, and dismissing the proceedings. In the decree it was further ordered that the City be granted an appeal to the Supreme Court.

The City elected not to appeal, and no notice of appeal by the City was given to the court reporter or filed with the Clerk.

The appeal which we have before us was taken by Warren Wild and others, who had themselves identified in a special bill of exceptions as taxpayers of the City of McComb City and members of the Hospital Committee, and who claimed the right to appeal as taxpayers under authority of Section 1212 and 1213, Code of 1942, Rec. The appeal bond was filed on February 7, 1963, and the record was filed with the Clerk of this Court on March 1, 1963. On April 3, 1963, the appellees, who, as taxpayers, had filed written objections to the validation of the bonds in the lower court, filed a motion to dismiss the appeal. Upon consideration of the motion some members of the court were of the opinion that the motion to dismiss the appeal should be sustained, but in view of the public interest involved the Court has decided to entertain the appeal and dispose of the case on its merits.

The appellants have assigned and argued only one point as ground for reversal of the judgment of the lower court, and that is, that the court erred in holding

that the bonds had not been validly authorized, since the election was called by the municipal authorities in the first instance without waiting for the protest petition.

We think there was no error in the chancellor's finding that the failure of the governing authorities of the municipality to publish the full text of the resolution declaring their intention to issue the bonds for the length of time and in the manner required by the statute, before taking further action in the matter, rendered the proceedings invalid.

Code Section 7129-51 expressly provides that: "Before issuing any such bonds, notes or other evidences of indebtedness, the board of supervisors, acting for a county or supervisors district or election district thereof, or the mayor and board of aldermen, or city council, or other like governing body, acting for a city or town, shall adopt a resolution declaring its intention to issue the same, stating the amount and purpose thereof, whether such hospital, nurses' home, health center, health department, diagnostic or treatment center, rehabilitation facility, nursing home or related facilities are to be erected, acquired, remodeled, equipped, furnished, maintained and operated by such county, city, town or supervisors district separately, or jointly with one or more other counties, cities, towns, supervisors districts or election districts of a county, and fixing the date upon which further action will be taken to provide for the issuance of such bonds, notes or other evidences of indebtedness." It is then provided that: "The full text of such resolution shall be published once a week for at least three consecutive weeks in at least one newspaper published in the county or city, as the case may be, or if none be so published, in a newspaper having general circulation therein. The first publication of such notice shall be made not less than twenty-one (21) days prior to the date fixed in such resolution as afore-

said, and the last publication shall be made not more than seven (7) days prior to such date."

The purpose which the Legislature had in mind in requiring that the full text of the resolution be published for at least three consecutive weeks was to give the taxpayers and the qualified voters of the municipality not only notice of the intention of the governing authorities of the municipality to issue the bonds, but also to give the taxpayers and qualified electors of the municipality notice of the facts required to be stated in the resolution. The provisions of the statute requiring the publication of the full text of the resolution are plain and unambiguous, and the full text of the resolution in this case should have been published for the length of time and in the manner required by the statute. The resolution was published only one time, and that publication was made only ten days before the election was held.

It is argued, however, that, since the original enactment of Section 7129-51, Code of 1942, Rec., which was originally enacted as Chapter 277, Laws of 1944, the Legislature, by amendments to two other bond statutes (Ch. 279, Sec. 1, Laws of 1950, which now appears as Code Section 2926-05, and Ch. 147, Sec. 5, Laws of 1960, which now appears as Code Section 8936-55), has expressly provided that the board of supervisors of a county or the governing body of a municipality, in issuing bonds under those statutes, may in its discretion call an election on the question in the first instance, in which event it shall not be necessary to publish the resolution declaring its intention to issue the bonds, and that the same degree of discretion should be deemed to exist by implication when the bonds are to be issued under the provisions of Code Section 7129-51.

██ █ But the Legislature has not seen fit to amend the hospital bond statute so as to allow the governing authorities of a municipality to dispense with the publi-

cation of the full text of the resolution in proceedings for the issuance of hospital bonds under authority of said Section 7129-51, as in cases where the bonds are issued under the other statutes mentioned above; and it is no answer to the chancellor's finding that the failure of the governing authorities of the municipality to comply with the requirements of Code Section 7129-51 relating to the publication of the resolution declaring its intention to issue the bonds in this case rendered the proceedings invalid, to say that other statutes authorizing the issuance of bonds by municipalities for other purposes have been amended so as to dispense with the requirement that the text of the resolution declaring the intention of the governing authorities to issue the bonds be published for three weeks.

■■ We hold that the publication of the full text of the resolution declaring the intention of the governing authorities of the municipality to issue the bonds in this case, for the length of time and in the manner required by the statute, constituted an integral part of the notice required to be given by the governing authorities of the municipality as a condition precedent to the exercise of the power to issue the bonds, and that the chancellor was correct in his finding that the failure of the governing authorities of the municipality to cause such publication to be made for the length of time and in the manner required by the statute rendered the proceedings for the issuance of the bonds invalid.

For the reasons stated above the judgment of the lower court is therefore affirmed.

Affirmed.

All Justices concur, except McGehee, C. J., who took no part.